IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID SILVA, on Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:16-cv-1100 |
| TRINIDAD DRILLING, LP, | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | COLLECTIVE ACTION |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, DAVID SILVA ("Silva" or "Plaintiff"), on behalf of himself and all other similarly situated employees, files this Original Complaint against TRINIDAD DRILLING, LP ("Trinidad" or "Defendant"), showing in support as follows:

## I.     NATURE OF THE CASE

1.     This is a civil action brought by Plaintiff pursuant to the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven day workweek.

2.     Plaintiff files this lawsuit on behalf of himself and as a FLSA collective action on behalf of all other similarly situated individuals who work/worked for Defendant as hourly paid drillers, derrickhands, motorhands, and/or floorhands (collectively "Drilling Rig Workers") and are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period of three years preceding the date this lawsuit was filed and forward due to Defendant not compensating them for mandatory pre-shift meetings.

*Plaintiff's Original Complaint – Page 1*

3.      Plaintiff and the collective action members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.      THE PARTIES, JURISDICTION, AND VENUE

### A.      Plaintiff David Silva

4.      Silva is a natural person who resides in Jim Wells County, Texas. He has standing to file this lawsuit.

5.      Silva is a former employee of Defendant with dates of employment beginning in 2005 and ending in approximately April 2015.

6.      At times relevant, Silva worked as a driller on Defendant's drilling rigs.

7.      At times relevant, Silva worked for Defendant areas of the Eagle Ford Shale located within this Judicial District and Division.

### B.      Collective Action Members

8.      The putative collective action members are all current and/or former hourly paid Drilling Rig Workers who, as employees of Defendant, are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek. Like Plaintiff, the putative collective action members are/were required to attend pre-shift meetings on a daily basis during their hitches for which they were not compensated. While the precise job titles for the Drilling Rig Workers might vary somewhat (*i.e.* driller, derrickhand, motorhand, and/or floorhand) those differences do not matter for purposes of determining their entitlement to overtime pay.

9.      Because of Defendant's practice/policy to not pay for daily pre-shift meetings during the respective hitches of the Drilling Rig Workers who routinely work/worked in excess

of 40 hours in a seven day workweek, those Drilling Rig Workers are not/were not paid all overtime compensation owed pursuant to the FLSA.

10.     Plaintiff and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

11.     The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward.

**C.      Defendant Trinidad Drilling, LP**

12.     Defendant is a foreign limited partnership organized under the laws of the State of Delaware.

13.     The general partner of Defendant is Trinidad Drilling, LLC.

14.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

15.     Defendant maintains multiple district offices/yards in Texas from which drilling rig workers, support personnel, supplies, and equipment are based and dispatched on a variety of work projects, including oil and/or gas exploration and production projects. Those district offices/yards include locations in San Antonio, Texas, Springtown, Texas and Midland, Texas.

16.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

17.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

18.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

19.     For example, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, equipment, and goods/materials used in connection with drilling rig operations.

20.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

21.     Defendant may be served with summons through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

**D.     Jurisdiction and Venue**

22.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

23.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

24.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA.

25.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. As previously identified, Defendant has one or more district offices/yards within this District and Plaintiff worked on Defendant's drilling rigs in areas of the Eagle Ford Shale located within this District.

26.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because, as previously identified, Defendant maintains business operations within the San Antonio Division and a substantial part of the events giving rise to the claims in this lawsuit occurred in the San Antonio Division.

### III.     FACTUAL BACKGROUND

27.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

28.     Defendant employs/employed numerous Drilling Rig Workers in connection with its drilling operations throughout locations in the United States. Those Drilling Rig Workers work/worked on and/or in support of Defendant's drilling rigs which drill/drilled for oil and or natural gas in locations such as the Eagle Ford Shale, Bakken Shale, Marcellus Shale, Permian Basin, and other areas.

29.     Defendant's drilling rigs operate/operated from numerous yards/sites of employment around the United States, including yards/sites of employment in or around San Antonio, Texas, Springtown, Texas and other sites. Drilling Rig Workers worked at/from/through those yards/sites of employment in connection with Defendant's drilling rig operations.

30.     Plaintiff was an hourly paid employee of Defendant.

31.     During times relevant, Plaintiff worked as a driller for Defendant.

32.     Drilling Rig Workers on Defendant's drilling rigs consisted of drillers, derrickhands, motorhands, and floorhands.

33.     Defendant's Drilling Rig Workers were paid on an hourly basis.

34.     Plaintiff and the other Drilling Rig Workers worked rotations generally known as "hitches." The hitches of some Drilling Rig Workers were seven days on and seven days off whereas others had hitches which were 14 days on and 14 days off. Plaintiff worked both types of hitches when employed by Defendant.

35.     During a typical hitch, Plaintiff regularly worked in excess of 40 hours per seven day workweek.

36.     During a typical hitch, Plaintiff and his fellow Drilling Rig Workers in the same crew generally worked 12 hours in a workday for their shift, and were then replaced by another crew of Drilling Rig Workers who generally worked the next 12 hours for their shift. This shift pattern generally continued until the assigned hitch was complete, and the two crews of Drilling Rig Workers were replaced by another two crews of Drilling Rig Workers. The same shift pattern occurred at each of Defendant's drilling rigs when operating.

37.     During a typical hitch, Plaintiff and the other Drilling Rig Worker crew members were required to attend a pre-shift meeting at the given drilling rig location approximately 30 to 45 minutes before their 12 hour shift began (the "Pre-Shift Meeting" or "Pre-Shift Meetings").

38.     Generally, Defendant did not pay Plaintiff and the other Drilling Rig Worker crew members for those Pre-Shift Meetings.

39.     The general purpose of a typical Pre-Shift Meeting was for Plaintiff and the other Drilling Rig Worker crew members to learn what happened during the preceding shift in order to prepare for the work to be performed in their upcoming shift. Examples of Pre-Shift Meeting subjects include learning about issues experienced during the preceding shift so that they can be addressed/anticipated in the upcoming shift, ensuring/planning for continuity of operations, and

learning goals/tasks to perform during the upcoming shift based on data from the prior shift. Safety issues/matters were also regularly addressed during the Pre-Shift Meetings.

40.      The Pre-Shift Meetings were integral and indispensable parts of the principal activities of Plaintiff and the putative collective action members.

41.      Pre-Shift Meetings as described above occurred at each of Defendant's drilling rigs worked on by the Drilling Rig Workers who comprise the putative collective action members in this lawsuit. As those Pre-Shift Meetings were generally not paid by Defendant, and since the putative collective action members regularly worked in excess of 40 hours in each seven day workweek during their respective hitches, this resulted in the putative collective action members not being paid all overtime wages which they were owed under the FLSA.

## IV.      CONTROLLING LEGAL RULES

42.      Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

43.      The FLSA generally requires that when an employee works more than 40 hours in a workweek, an employer must compensate that employee for all hours worked over 40 "at a rate no less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

44.      The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee . . .." 29 U.S.C. § 207(e).

45.      With only limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. for Bibb Cnty*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

46.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

47.     Federal law requires employers to make and keep accurate and detailed payroll data for certain employees. 29 U.S.C. § 211(c), 29 C.F.R. § 516.2(a). Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

48.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

## V.     FLSA CLAIMS

49.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

50.     All conditions precedent to the filing of this lawsuit, if any, have been fulfilled.

51.     At all relevant times, Defendant is/was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

52.     At all relevant times, Defendant is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

53.     Plaintiff and the putative collective action members are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

54.     Plaintiff and the putative collective action members are/were paid an hourly rate of pay by Defendant.

55.     At all material times, Plaintiff and the putative collective action members regularly work/worked in excess of 40 hours per seven-day workweek as employees of Defendant.

56.     Defendant is/was required to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven day workweek. 29 U.S.C. § 207(a)(1).

57.     Defendant failed to pay Plaintiff and putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

58.     The putative collective action members are similarly situated to Plaintiff and to each other under the FLSA. 29 U.S.C. § 203(e).

59.     Defendant's violations of the FLSA are/were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant was aware that Plaintiff and the putative collective action members were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in a seven day workweek. Plaintiff and the putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed forward for their FLSA claims.

60.     Plaintiff and the putative collective action members seek all damages available for Defendant's failure to timely pay all overtime wages owed pursuant to the FLSA.

## VI.     FLSA COLLECTIVE ACTION

61.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

62.     Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

63.     Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of himself and all current and former hourly paid Drilling Rig Workers who are/were employed by Defendant and who are/were not paid all overtime compensation owed for all hours worked over 40 in each and every workweek due to Defendant's practice and/or policy to not compensate them for the Pre-Shift Meetings. The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

64.     Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

65.     Plaintiff further reserves the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   JURY DEMAND

66.    Plaintiff demands a jury trial.

## VIII.   DAMAGES AND PRAYER

67.    Plaintiff asks that he and the putative collective action members be awarded a

judgment against Defendant or order(s) from the Court for the following:

    a.   An order conditionally certifying this case as a FLSA collective action and requiring notice to be issued to all putative collective action members;

    b.   All damages allowed by the FLSA, including back overtime wages;

    c.   Liquidated damages in an amount equal to back FLSA mandated wages;

    d.   Legal fees;

    e.   Costs;

    f.   Post-judgment interest;

    g.   All other relief to which Plaintiff and the Collective Action Members are justly entitled.

                     Respectfully submitted,

                     BARON & BUDD, P.C.

                     By: s/Allen R. Vaught
                          Allen R. Vaught
                          State Bar No. 24004966
                          Melinda Arbuckle
                          State Bar No. 24080773
                          3102 Oak Lawn Avenue, Suite 1100
                          Dallas, Texas  75219
                          (214) 521-3605 – Telephone
                          (214) 520-1181 – Facsimile
                          avaught@baronbudd.com
                          marbuckl@baronbudd.com

                     ATTORNEYS FOR PLAINTIFFS